(34 Misc. Rep. 598.)

### In re SULLIVAN.

(Supreme Court, Special Term, Saratoga County. April, 1901.)

LOCAL OPTION ELECTION—RESUBMISSION OF QUESTIONS.

Laws 1896, c. 112, § 16, as amended by Laws 1900, c. 367, § 3, provides that the town clerk, at least ten days before a town meeting, shall post in four public places notices that local option questions will be voted on at the town meeting, and also publish a notice in a newspaper of the county or town five days before the vote is taken. *Held*, that the provision is mandatory, and the resubmission of the local option questions at a special town meeting without such a notice renders a vote then cast a nullity.

Application of James F. Sullivan for a special town meeting in the town of Moreau for resubmission of the local option questions to the electors of the town. Motion denied.

D. S. Potter, for petitioner.
McArthur & Starbuck, for respondents.

HOUGHTON, J. More than 20 days before the biennial town meeting held in the town of Moreau, Saratoga county, on the 5th day of March, 1901, a petition was duly filed with the town clerk of that town, signed by more than 10 per centum of the electors voting at the preceding general election, requesting the submission to the electors of the town of the four questions provided by section 16 of the liquor tax law respecting the issuing of license. Nothing further was done by the town clerk with respect to the submission of these questions except to prepare ballots for the use of electors. The vote was a large one, and resulted in the affirmative with respect to allowing the issuing of license to pharmacists, and in the negative as to all the other propositions. The petitioner, Sullivan, and other electors of the town insisted that the four propositions with respect to license had not been properly submitted at such town meeting, and procured to be filed with the town clerk a petition signed by 10 per centum of the electors voting at the preceding general election, asking that such propositions be resubmitted. This court made an order allowing such resubmission at a special town meeting, as provided by section 16, upon the ground that the town clerk had failed to post notices of the fact that the local option questions were to be voted upon at such town meeting, and had also failed to publish such notice, as required by the amendment to said section passed by the legislature in 1900. Chapter 367, § 3. This is an application to set aside said order and restrain the resubmission of said questions.

The attention of the town clerk and of those interested in prohibiting the sale of liquors in the town had not been called to the recent amendment of the legislature with respect to the giving of notice. The provision of law with respect to notice in force at the time of the filing of the first petition and the holding of the town meeting was as follows:

"The town clerk shall also, at least ten days before the holding of such town meeting or general election, cause to be printed and posted in at least four public places in such town, a notice of the fact that all of the local option questions provided for herein will be voted on at such town meeting or general election; and the said notice shall also be published, at least five days before the vote is to be taken, once, in one newspaper published in the county in which such town is situate, which shall be a newspaper published in the town, if there be one."

The parties opposed to a resubmission of the question concede that notices were not given as above prescribed; but they say as good or better notice was given to the electors by the holding of several temperance meetings in various parts of the town, which were largely attended, and at which voters were urged to vote against the granting of license; and by the fact that news items, commenting upon the fact that a temperance agitation was going on in the town of Moreau, and a vote was to be taken upon the question of license at the coming town meeting, frequently appeared in newspapers published in the village of Glens Falls, in an adjoining county, which were largely taken and read by the voters of the town; and also by the fact that the poll list of the preceding election was consulted, and printed matter sent to every elector of the town, which apprised him of the fact that the question of license or no license was to be voted upon at the town meeting, and urging him to vote for no license, and giving him reasons why he should do so. These notices were ones which had evidently been used in another locality. They were headed: "To the Voters of Petersburg: The following questions will be submitted to you for decision at the coming election, to be held March 2d." Then follows the form of the questions under the old liquor tax law, stating whether traffic in liquors shall be allowed "in the town of Petersburg," with instructions as to how to vote to defeat the proposition, and a computation of how little in taxes will be saved in the town of Petersburg by the license fees collected, and how much more burden would be cast upon the town by allowing the traffic in liquors to exist, with exhortation to vote for no license. In addition to thus sending this paper to each voter of the town, one of these papers was posted in the mill of the International Paper Company, where many voters worked; another in a grocery store, where many of them traded; and another in a shoe store that many of them patronized. It is very likely that from the temperance agitation and meetings in the town, and from the news items appearing in the Glens Falls papers, which were largely read in that town, a very large number, and possibly all, of the voters knew that the question of license or no license was to be passed upon at the town meeting; and they probably understood that the paper which was mailed to them and posted in the three places in the town related to the vote which was to take place

at the town meeting. But, even if every elector received the paper mailed to him, and saw those that were posted in the three places, it can hardly be said, in any legal sense, that it was a notice that the voters of the town of Moreau were to pass upon the local option questions. It was not directed to them, but to the voters of another town. The date mentioned for the town meeting was the 2d of March, whereas this town meeting was the 5th of March, and it was not signed by any official of the town. The provisions of the liquor tax law as to what shall be done by the town clerk with respect to notice when the questions are to be voted upon are clear, and, it seems to me, mandatory. He "shall," at least ten days before the holding of the town meeting, post in "four" public places a notice of the fact that the local option questions will be voted on; and he "shall" publish said notice, at least five days before the vote is to be taken, in a newspaper in the county, or in the town, if there be one. The law does not say that he "may" give notice in any other manner, either by mailing actual official notice or by personal notice. It is a familiar proposition of statutory construction that where persons are interested in the giving of notice,—as all the electors of a town are in the question as to whether there shall be license or no license,—the use of the word "shall," in directing the manner of notice, is mandatory. In re Douglass, 46 N. Y. 42, 44. The legislature had in mind that some such thing as has happened here might happen, in view of the fact that town clerks are elected from the business men of the various towns of the state, and not versed in the law, when it provided that "if, for any reason, except the failure to file any petition therefor, the four propositions to be submitted herein to the electors of the town shall not have been properly submitted at such town meeting, such propositions shall be resubmitted at a special town meeting duly called." An opportunity is thus given, if there be any error in the first submission, for the electors to again, in legal manner, record their will. The failure to give notice by posting and publishing is not, therefore, a mere irregularity, but rendered the vote a nullity.

In Re Eggleston, 51 App. Div. 38, 64 N. Y. Supp. 471, one phase of the local option law was very carefully passed upon by the appellate division of the Fourth department. In that case the town of Dayton, in the county of Cattaraugus, held its town meeting on the day of general election. A petition for the submission of the question of license or no license was filed first with the town clerk, and then taken from that office and filed with the county clerk of the county. No notices were given by the town clerk for the submission of the question. The court held that the vote was a nullity, saying, "The filing of the petition with the town clerk was a necessity, and the ten-days notice by that official obligatory." In People v. Mosso, 30 Misc. Rep. 164, 63 N. Y. Supp. 588, one of the questions submitted did not follow the language of the statute. It was held that this was mandatory, and the vote upon the question of no effect. In McMullen v. Berean, 29 Misc. Rep. 443, 60 N. Y. Supp. 578, the petition was filed with the town clerk, but not with the county clerk (the town meeting being held at the time of the

general election), within the prescribed time. The court held that this requirement was mandatory, remarking "that, when the law clearly points out the way in which proceedings must be taken by those desirous of ascertaining the will of the electors of the town, the plain provisions of the law must be complied with. It is not for the courts to commend or condemn the statute, but to enforce its provisions." In People v. Town Clerk of Town of Bainbridge, 26 Misc. Rep. 220, 56 N. Y. Supp. 64, the petition was not filed with the town clerk 20 days before the town meeting, and the court held that he could not be required to print the ballots.

The cases cited by counsel seeking to uphold the former vote are not contrary to those referred to. In People v. Chandler, 41 App. Div. 178, 58 N. Y. Supp. 794, there are some remarks of the court which would seem to hold that a less notice than that required by the statute would be effectual. An examination of that case, however, shows that the real question decided was whether or not the town clerk could be compelled to forthwith call a special town meeting for resubmission of the questions. The court held that he could not do until the court had granted an order permitting such town meeting, as provided by the section. This case was decided by the same court, composed of several of the same judges, which decided In re Eggleston, 51 App. Div. 38, 64 N. Y. Supp. 471; and, if there is any holding in the former case contrary to the last, it must be deemed to have been overruled by the latter decision, which holds that it is incumbent upon the town clerk to give notice in the manner prescribed by the statute. In Re Arnold, 32 Misc. Rep. 439, 66 N. Y. Supp. 557, the case involved only the question of the form of the ballot, and the court there held that whatever existed was a mere irregularity. In People v. Wood, 148 N. Y. 142, 42 N. E. 536, several officials of the same class were to be voted upon, and the relator complained that his name was opposite the wrong one upon the other ticket. The court held that this could not vitiate the vote.

It is to be regretted that the vote as recorded by the electors of the town cannot stand, and that there is necessity for resubmission. It is doubtless true that the vote recorded the will of a majority of the electors of the town. The plain provisions of the law, however, were not complied with, and therefore the vote was of no avail. The motion is denied, but without costs.

Motion denied, without costs.