(44 Misc. Rep. 384.)

## In re SMITH.

(Supreme Court, Special Term, Monroe County. July, 1904.)

1. INTOXICATING LIQUORS—LOCAL OPTION ELECTION.

Failure of a town clerk to post in four public places in the town printed notice of a biennial town meeting in the manner required by the liquor tax law (Laws 1900, p. 853, c. 367) § 16, rendered a submission of the local option questions at such meeting void.

2. TOWNS—LEGAL NOTICES—POSTING.

Town Law (Laws 1890, p. 1224, c. 569) § 86, providing that there shall be furnished to the town clerk a sign with the name of the town followed by the words "Town Clerk's Office," with board space for posting thereon the legal notices of the town, does not require him to post the notice of a biennial town meeting on such board space.

3. INTOXICATING LIQUORS—LOCAL OPTION ELECTION—SUBMISSION OF QUESTIONS.

Where a town clerk added to the four statutory questions to be submitted under the liquor tax law at a joint meeting a fifth question as to whether the town labor system for working highways should be changed to a money system, it tended to require a resubmission of such questions, as such provision may have misled and confused the electors.

4. SOLDIERS' HOME—CHANGE OF DOMICILE.

A soldier, when becoming an inmate in a soldiers' home maintained in a town by the state, is a person kept in an asylum, within Const. art. 2, § 3, so that he does not, by becoming an inmate of the home, gain or lose his former residence.

5. TOWNS—QUALIFICATION OF ELECTORS.

A soldier in a soldiers' home maintained in the town by the state cannot, where a general election in the state and the biennial meeting of the town are held on the same day under Town Law, § 12 (Heydecker's Gen. Laws, p. 1404, c. 20), providing that at a town meeting held at a general election no person shall be allowed to vote for town officers who is not entitled to vote at such general election, vote for town officers unless he could have voted at the general election.

Application of Otis H. Smith, an elector of the town of Bath, that four propositions under the liquor tax law be submitted to the town. Prayer of petitioner granted.

C. H. McMaster (John F. Little, of counsel), for C. H. Smith.

Reuben R. Lyon, for Moses Davison and the town clerk.

William G. Van Loon, for Patrick W. Cullinan, State Commissioner of Excise.

¶ 4. See Elections, vol. 18, Cent. Dig. § 73

DAVY, J.  This is an application by Otis H. Smith, of the town of Bath, Steuben county, supported by 71 electors, representing eight-tenths of the taxpayers and business men of that town, asking that the four propositions under section 16 of the liquor tax law (Laws 1900, p. 853, c. 367), be resubmitted to the electors of said town, on the ground that the election held November 3, 1903, to vote on those questions was illegal.  The petition states: That at the last town meeting held in said town the local option questions were voted upon, with the result that a majority vote was cast in the negative on the first, second, and fourth propositions.  The election is attacked on the ground that the notice printed and posted by the town clerk did not comply with the provisions of the liquor tax law in that the notice does not state in and for what town the four excise questions would be submitted, and that the printed notice included a different and distinct question for submission, which had no relation whatever to the excise questions, to wit: "Question Five. Shall the labor system of taxation for the working the highways of the town of Bath be changed to the money system?" That the notice was not posted in four public places in said town.  It is further attacked on the ground that the town clerk of the town of Bath had no bulletin board on the outer door of his office for the posting of notices, as required by the town law, and that "no notice containing the four questions required to be submitted under the liquor tax law was posted on any bulletin board on the outer door of said town clerk's office at any time prior to the holding of said biennial town meeting." It is also alleged in the petition that if ballots containing the said four questions had been furnished the inmates of the Soldiers' Home in the town of Bath, and they had been allowed to vote, the result would have been a decided majority in the affirmative on all four questions; that several soldiers from the Home offered to vote, and for a time their votes were received, although not registered, and, after several had voted, a conference was held by the inspectors, who decided that the soldiers had the right to vote on the local option questions, but, as they were not registered, they refused to receive any more of their votes.

Section 16 of the liquor tax law provides in reference to local option that:

"In order to ascertain the will of the qualified electors of each town, the following questions shall be submitted at each biennial town meeting hereafter held in any town in this state, provided the electors of the town to the number of ten per centum of the votes cast at the next preceding general election shall request such submission by written petition, signed and acknowledged by such electors before a notary public or other officer authorized to take acknowledgments or administer oaths, which petition shall be filed not less than twenty days before such town meeting with the town clerk of the town:

"Question 1. Selling liquor to be drunk on the premises where sold.— Shall any corporation, association, co-partnership or person be authorized to traffic in liquors under the provisions of subdivision one of section eleven of the liquor tax law, namely, by selling liquor to be drunk on the premises where sold, in (here insert the name of the town)?

"Question 2. Selling liquor not to be drunk on the premises where sold.— Shall any corporation, association, co-partnership or person be authorized to traffic in liquors under the provisions of subdivision two of section eleven of the liquor tax law, namely, by selling liquor as a pharmacist on a physician's prescription, in (here insert the name of the town)?

"Question 3. Selling liquor as a pharmacist on a physician's prescription— Shall any corporation, association, co-partnership or person be authorized to

traffic in liquors under the provisions of subdivision three of section eleven of the liquor tax law, namely, by selling liquor as a pharmacist on a physician's prescription, in (here insert the name of the town)?

"Question 4. Selling liquor by hotel keepers only.—Shall any corporation, association, co-partnership or person be authorized to traffic in liquors under subdivision one of section eleven of the liquor tax law, but only in connection with the business of keeping a hotel in (here insert the name of the town)?"

Upon filing the petition the statute makes it imperative on the town clerk at least 10 days before the holding of such town meeting or general election to cause to be printed and posted in at least four public places in such town a notice of the fact that all of the said four option questions will be voted on at such town meeting or general election, and the said notice shall also be published at least five days before the vote is to be taken, once in one newspaper published in the county where such town is situated, which shall be a newspaper published in the town, if there be one. The statute also provides that:

"If for any reason except the failure to file any petition therefor, the four propositions provided to be submitted to the electors of a town shall not have been properly submitted at such biennial town meeting, such propositions shall be submitted at a special town meeting duly called. But a special town meeting shall only be called upon filing with the town clerk the petition aforesaid and an order of the Supreme or County Court, or a justice or judge thereof, respectively, which may be granted upon eight days' notice to the State Commissioner of Excise, sufficient reason being shown therefor."

It is evident that this statute contemplates that the four excise propositions shall be resubmitted to the electors of the town at a special town meeting, if, for any reason except the filing of the petition therefor, the four propositions were not properly submitted at such biennial town meeting, providing the requisite number of electors petition therefor. This provision of the statute, while it is mandatory, should receive a reasonable construction. A resubmission of these propositions should not be ordered for slight irregularities; but when they affect the result of the election, or render it uncertain, then the propositions should be resubmitted. The statute does not say that such propositions may be submitted. It says that they shall be submitted. It is a familiar rule of construction that where persons are interested in the giving of a notice, as all the electors of a town are as to whether there shall be a license or no license, where the statute says it shall be submitted, the word "shall" is mandatory. To hold that this statute is directory only would leave it discretionary with the town clerk not to comply with the requirements of the statute in printing and posting the notices. Such a construction would be contrary to the plain intent of the act. If the notice is not posted in public places, many of the voters might be ignorant that the local option question is to be voted on, and thereby a large number of the electors might be deprived of the right to vote on a matter of the greatest importance to their interests. The object of publishing and posting the notice is to give every citizen having a legal right to vote an opportunity to exercise that privilege. If errors and irregularities are to be held valid, the public are not protected in their rights, and the will of the people upon the question of license or no license would in many cases be defeated. The local option law, like the law pertaining to the election of officers, is designed to secure a fair

expression of the electors of the town in favor of or against granting license. These provisions of the statute, which affect the time and object of the election, are mandatory, because they lie at the foundation of the election.

In Matter of Eggleston, 51 App. Div. 38, 64 N. Y. Supp. 471, the local option law was very carefully considered and passed upon by the Appellate Division of this department. In that case the town of Drayton, in the county of Cattaraugus, held its town meeting on the day of the general election. A petition for the submission of the question of license or no license was filed first with the town clerk and then taken from that office and filed with the clerk of the county. No notices were given by the town clerk for the submission of the question. The court held that the votes were a nullity, saying the filing of the petition with the town clerk was a necessity, and the 10-days notice by that official obligatory.

In Matter of O'Hara, 63 App. Div. 514, 71 N. Y. Supp. 614, Mr. Justice Williams, in speaking for the court, said:

"Upon the merits we think we are controlled by the case recently decided in this court. Matter of Eggleston, 51 App. Div. 38, 64 N. Y. Supp. 471. We determined in that case that the notice must be given as required by the liquor tax law in order to render the election valid, and we must adhere to that rule here."

In People ex rel. Caffrey v. Mosso, 30 Misc. Rep. 164, 63 N. Y. Supp. 588, one of the questions submitted did not follow the language of the statute. It was held that this was mandatory, and the vote upon the question of no effect.

In McMullen v. Berean, 29 Misc. Rep. 443, 60 N. Y. Supp. 578, the petition was filed with the town clerk, but not with the county clerk, the town meeting being held at the time of the general election within the prescribed time. The court held that its requirements were mandatory, remarking that, when the law clearly points out the way in which proceedings must be taken by those desiring the will of the electors of the town, the plain provision of the law must be complied with.

In People ex rel. Hovey v. Town Clerk, 26 Misc. Rep. 220, 56 N. Y. Supp. 64, the petition was not filed with the town clerk 20 days before the town meeting, and the court held that he could not be required to print the ballots.

The court, in Matter of Powers, 34 Misc. Rep. 636, 70 N. Y. Supp. 590, held that the provisions of the statute that at least 10 days before the holding of the town meeting the town clerk shall cause notices to be printed and posted is peremptory, an absolute requirement necessary to give jurisdiction to take the effect prescribed by the statute. The court says:

"It is not a question of actual, but of legal, notice. It is analogous to the notice required for a judicial sale, where both posting and publication are required. Neither can be omitted."

It is urged that the casting of illegal votes by the inmates of the soldiers' home is an irregularity sufficient of itself to authorize the court to resubmit the excise questions to the electors of the town at a special town meeting. It frequently happens in this class of cases that

the irregularities are such that it is difficult to determine to what extent they have affected the result. But where it is plain that they change or render doubtful the result, then it is the duty of the court to resubmit such questions to the voters of the town.

I do not agree with the learned counsel for the petitioner that inmates of the soldiers' home had a right to vote on the local option questions, even if they had been registered. The Constitution of this state (article 2, § 3) provides that:

"No person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States; nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse, or other asylum, or institution wholly or partly supported at public expense."

The soldiers' home is included in the term "asylum" used in the above clause of the Constitution. It is immaterial whether it is called an asylum or a soldiers' home. An asylum is defined by Webster to be an institution for the protection or relief of the unfortunate. Soldiers who enter the home and are supported at the public expense are objects of charity, having no home or means of support, and are maintained at the public expense. The object and purpose of the Soldiers' Home at Bath is to provide a home for the reception, care, maintenance, and relief of soldiers and sailors who served in the Union army or navy during the War of the Rebellion from the state of New York, and those honorably discharged therefrom, who, from any cause, stand in need of the care and benefit of a home. The inmates of the home own no property, pay no local taxes, do no work in or for the benefit of the town, and have no pecuniary interest in its local affairs. The home which they occupy is state property, and they are under the control and management of the board of trustees appointed by the Governor. It is evident that the Constitution prohibits a change of residence under such circumstances, and that when a person enters the soldiers' home for the sole purpose of receiving the benefits of the institution his former residence must be considered his domicile for citizenship.

In Silvey v. Lindsay, 107 N. Y. 56, 13 N. E. 444, the inmate had been in the soldiers' home for six years, and swore that it was his intent at all times to make his residence in said institution so long as he should be permitted to do so. The court held that he could not gain a residence by being an inmate of the institution, and was not an elector in the township where the home was located. If the inmate was a resident of the town of Bath, where the home is located, at the time of his admission, his right to vote, if registered, could not be questioned. The Constitution prohibits a change of residence under such circumstances. When one becomes an inmate of the home for the sole purpose of receiving the benefits conferred, his former residence must be considered his domicile for citizenship.

Section 16 of the liquor tax law (Laws 1900, p. 853, c. 367) provides that:

"Any elector qualified to vote for town, county or state officers at such town meeting or general election shall be entitled to vote on such local option questions."

Section 12 of the town law (Heydecker's Gen. Laws, p. 1404, c. 20) provides that at town meetings held at the time of general elections no person shall be allowed to vote for candidates for town offices who is not registered and entitled to vote at such general election.

The qualifications, therefore, necessary to be had by the inmates of the soldiers' home to vote on the local option questions are the same as the qualifications necessary to vote for candidates for town offices. It is conceded that the inmates of the soldiers' home who voted were not registered. Those votes were clearly illegal. If, however, the result was not changed by their votes, the fact that they were received would not make the election void, and might not be sufficient reason in and of itself for calling a special town meeting.

It is conceded that the notice included "Question Five," which reads: "Shall the labor system of taxation for the working the highways of the town of Bath be changed to the money system?" It is urged that the publication of this question with the four questions submitted under the liquor tax law tended to confuse and mislead the voters, and thereby rendered the election nugatory. It is quite apparent that the printing of this notice did not conform to the requirements of the statute, and may have confused and misled the electors.

It is also urged by the petitioner that it was the duty of the town clerk under the town law to have kept a signboard with the name of the town thereon, followed by the words "Town Clerk's Office," and to have posted the notice thereon. The town law (Laws 1890, p. 1224, c. 569, § 86) contains this provision:

"There shall also in like manner be furnished and kept for every town clerk's office a sign with the name of the town followed by the words, 'Town Clerk's Office' in plain characters thereon, with sufficient board space immediately below for posting thereon the legal notices of the town, which sign and board-space shall be placed and kept on or at the outside front door of every town clerk's office, which board shall always be one of the public places upon which any legal notice in the town may be posted."

It appears that the town clerk's office is located and has been in recent years in a second-story room in a building near the center of the west block on Main street or Liberty street (which is the main street) of the village of Bath. There is a door at the foot of the stairway leading to said office, and a notice posted there would be certain to attract the attention of persons passing along the street. The liquor tax law does not require the town clerk to post the notice upon the sign or board which the town law requires him to keep in front of his office, on which legal notices may be posted. He is required to print and post in at least four public places in such town a notice of the fact that all the local option questions provided by the liquor tax law will be voted for at such town meeting or general election. It would have been advisable, however, for the town clerk to have had such a board, and to have posted the notice thereon; but he was not required under the statute to do so.

It is also alleged in the petition and not disputed that the village of Bath is a commercial center, and the county seat of the county of Steuben, where one-half of the courts are held. It contains the county buildings and records, and the board of supervisors holds its sessions there. The Steuben County Fair is held annually for a week, and peo-

ple come there from all parts of the state and from other states to transact business; and that it is necessary that hotel accommodations should be furnished to transient guests at all hours of the day or the night; that the hotels in the village cannot be maintained and accommodations furnished to the guests unless they are permitted to sell liquors; that the vote against granting license has already greatly affected the business interests of the town; taxes have been increased, electric light day service discontinued, rents diminished, and property depreciated in value; that for thirty years past the town of Bath, with one single exception of about six months, has been a licensed town; that the citizens of the town naturally reached the conclusion that "Question Four," pertaining to the sale of liquor by hotel keepers, would be carried, and for that reason no special effort was made to induce the electors to vote for it; that eight-tenths of the business men and taxpayers of this town have petitioned to have the excise question resubmitted. Taking all those facts into consideration with the fact that all the alleged irregularities combined evidently affected the result, a refusal, under such circumstances, to order a resubmission of the excise questions might result in great injury to the business men, taxpayers, and electors of the town.

The prayer of the petitioner is therefore granted, and the town clerk of the town of Bath is directed to call a special town meeting, at which the four excise questions shall be resubmitted to the electors, who, untrammeled by any other issues, may fully and fairly express their views at the ballot box; provided, however, that the electors of the town to the number of 10 per centum of the votes cast at the next preceding general election shall within 15 days from the date of filing this decision request such submission by a written petition signed and acknowledged by such electors and filed with the town clerk, as required by section 16 of the liquor tax law.

Ordered accordingly.